# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JODELL MARTINELLI, *et al.*　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　　　　Case No. 10-407-RDR
　　　　　　　　　　　　　　　　　　)　　　(D. Ariz. Case No. 09-529-PHX-DGC)
PETLAND, INC.,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　　　　)

## MEMORANDUM AND ORDER

This matter comes before the court upon nonparty Lambriar, Inc.'s Motion to Quash, Modify and/or for a Protective Order on a Subpoena in a Civil Case (ECF No. 1). Lambriar seeks a court order quashing or modifying a subpoena issued from the District of Kansas that requests a corporate representative's attendance at a deposition, production of documents, and a request to inspect the premises. Alternatively or in addition to the motion to quash, Lambriar requests entry of a protective order. Plaintiffs to the underlying action in the District of Arizona served the subpoena on Lambriar and have filed a response opposing the motion. Defendant Petland has taken no position in this district with regard to the enforcement of the subpoena. For reasons explained more fully below, the motion is granted in part and denied in part.

## I.　　　Procedural Conference Requirement

This district's local rules provide that the "court will not entertain any motion to resolve a discovery dispute . . . unless the attorney for the moving party has conferred or has made a reasonable effort to confer with opposing counsel concerning the matter in dispute before filing a motion."[1] The certification "must describe with particularity the steps taken by all attorneys to

---

[1] D. Kan. Rule 37.2.

resolve the issues in dispute."[2]  Under the rule, merely sending a Golden Rule letter is insufficient.[3]

Rather, the movant and the party opposing the motion must "in good faith converse, confer, compare

views, consult, and deliberate, or in good faith attempt to do so."[4]

Lambriar's motion fails to describe the steps it took to resolve this discovery dispute prior

to seeking judicial intervention. As such, the court could deny the motion on procedural grounds for

failing to confer.  However, plaintiffs' counsel have attached some correspondence between

themselves and Lambriar's counsel, and it is apparent the parties had several conversations by phone

about the discovery dispute.  For these reasons, the court, in its discretion, will rule on the merits

of the motion; however, future motions filed in this district should strictly comply with the local

rules.

## II.    Background

In the underlying civil action pending in the District of Arizona, plaintiffs Elliot Moskow

and Karen Galatis assert claims against defendant Petland, on behalf of themselves and a proposed

class of "[a]ll persons who purchased a puppy from a Petland retail store since November 20, 2004,"

except for "any defendants, their respective parents, employees, subsidiaries and affiliates, and all

government entities."[5]  Remaining are consumer fraud claims and a Racketeer Influenced and

Corrupt Organizations Act ("RICO") claim.[6]  Plaintiffs allege Petland violated RICO, specifically

---

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] First Am. Class Action Compl. Exh. A, at ¶113, ECF No. 4-2.

[6] *See generally id.*; *see also Martinelli v. Petland, Inc.*, No. CV-09-529-PHX-DGC, 2010 WL 376921, at *11 (D. Ariz. Jan. 26, 2010) (dismissing all claims against a co-defendant and dismissing all claims against Petland except "(1) Plaintiffs Elliot Moskow and Karen Galatis' count-one RICO claim, (2) Plaintiffs Elliot Moskow and

the federal mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, by engaging in a fraud scheme based on misrepresentations about the health of the puppies sold at Petland franchises and the breeders and breeding conditions from which the puppies came. Plaintiffs claim they relied on the scheme's misrepresentations when deciding to purchase Petland puppies. Plaintiffs also assert an unjust enrichment claim arising from allegations that Petland profited and benefitted from the scheme to defraud purchasers of Petland puppies. Plaintiff Moskow asserts a claim under the Maine Unfair Trade Practices Act arising from allegations that he suffered a monetary loss in the form of veterinary expenses and the purchase price of the puppy. He alleges Petland concealed the fact that its puppies were bred at puppy mills and that Petland profited from the concealment because he and the proposed class would not have purchased the puppies but for the alleged concealment.

On March 16, 2010, District Judge David G. Campbell conducted a scheduling conference with the parties and subsequently entered a case management order on March 18, 2010, governing pretrial proceedings. Among other things, the order provides that, "Discovery related to class certification shall be completed by July 30, 2010[,]" and, "Class certification discovery shall focus on proximate cause issues."[7] The order further provides plaintiff "may serve up to 10 Rule 45 subpoenas on third parties" and may conduct "seven depositions, allocated among [Petland] and third-party witnesses at Plaintiffs' counsel's discretion."[8] Plaintiffs served a subpoena on Lambriar, which supplied Petland with the puppies that plaintiffs Galatis and Moskow purchased from Petland retail locations. The subpoena commands a corporate representative's attendance at a deposition,

---

Karen Galatis' unjust enrichment claim, and (3) Plaintiff Moskow's claim under the Maine Unfair Trade Practices Act").

[7] Case Management Order from the District of Arizona Ex. B, at 1, ECF No. 4-3.

[8] *Id.* at 2.

seeks the production of multiple categories of documents, and requests to inspect Lambriar's premises in Mahaska, Kansas. Because the subpoena was issued from the District of Kansas, Lambriar filed its motion to quash in this district on July 20, 2010. Plaintiffs' class certification motion is due later this month, and oral argument on the motion is set for December 10, 2010.

### III.   Request to Quash or Modify the Subpoena[9]

Fed. R. Civ. P. 45 governs subpoenas directed at nonparties to litigation. Under the rule, the issuing court must quash or modify a subpoena that fails to allow reasonable time for compliance, requires a nonparty to travel more than 100 miles, requires the disclosure of privileged or other protected material, or subjects a person to an undue burden.[10] The court may quash or modify a subpoena that requires the disclosure of a trade secret or other confidential or commercial information, requires disclosure of an unretained experts's opinion, or requires a nonparty to incur substantial expense to travel more than 100 miles to attend trial.[11] Lambriar asserts multiple objections to the subpoena, including: veterinarian-client privilege, undue burden, vagueness, overbreadth, the 100-mile rule, and relevance. The parties' briefs focus on overarching general objections to all of the discovery requests rather than the propriety of individual discovery requests. Accordingly, the court addresses these issues in the same manner.

### A.   Document Requests

---

[9] Lambriar devotes substantial portions of its reply brief to matters immaterial to this discovery dispute. Lambriar's diatribe against the Humane Society of America and its thoughts on the buying and selling of mass quantities of animals as part of American capitalism does nothing to further the court's understanding of its objections to discovery requests. Indeed, it is a waste of judicial resources to comb through the brief to separate legitimate arguments from matters collateral to the real issues before the court: the propriety of a subpoena served on Lambriar. The court disregards arguments unrelated to this discovery dispute.

[10] Fed. R. Civ. P. 45(c)(3)(A)(i)-(iv).

[11] Fed. R. Civ. P. 45(c)(3)(B)(i)-(iii).

Lambriar has agreed to a limited production as to Request Nos. 1-5, 11-15, and 23. Lambriar states it has no objection to producing non-privileged documents and providing information about the remaining named plaintiffs' dogs, including information regarding certain breeders. Lambriar also states it does not object to responding to Request No. 32 if the request is limited to the time period when the remaining named plaintiffs' dogs were at the facility. Plaintiffs' counsel have agreed to accept these documents "in temporary satisfaction of the document requests contained in the subpoena."[12] Plaintiffs' counsel also requested that Lambriar produce documents in response to Request Nos. 16, 19, 32, and 36-39, which plaintiffs contend are the only remaining requests in dispute. The court is unclear whether plaintiffs will only seek to enforce the previously mentioned document requests, or if plaintiffs' use of the phrase "temporary satisfaction" means they will request full compliance with the subpoena if Lambriar's limited document production is not to their liking. Lambriar, as the moving party, has asked the court to address all of the document requests not explicitly withdrawn.[13] The undersigned will do so but notes this analysis results in a finding that ths subpoena is enforceable as to discovery requests beyond the initial limited production to which plaintiffs agreed. If plaintiffs decide to enforce their subpoena to the fullest extent allowable, it is their right to do so;[14] however, if they find Lambriar's limited production is sufficient and do not seek documents beyond that production, that is also their right. It appears plaintiffs have

---

[12] *See* Letter to Gregory M. Dennis for Lambriar from Charles J. Kocher for plaintiffs Ex. E, at 1, July 9, 2010, ECF No. 4-6.

[13] Reply in Support of Mot. to Quash, Modify and/or for a Protective Order on a Subpoena in a Civil Case 13-14, ECF No. 8 ("[H]aving no interest in piecemeal litigation and continuing expense before this Court; and continual business disruption, Lambriar, Inc. believes the better approach and practice is to deal *in toto* with the Subpoena.").

[14] *See Brunet v. Quizno's Franchise Co.*, No. 07-cv-01717-PAB-KMT, 2009 WL 902434, at *2 (D. Colo. April 1, 2009) ("Absent a finding by the court that a valid basis exists to quash a subpoena, the party receiving a subpoena must comply with it.") (citing *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997)).

withdrawn Request Nos. 18, 20, and 21. Although Lambriar contends plaintiffs also withdrew Request Nos. 16 and 39, it appears plaintiffs still seek responsive documents. Therefore, the court will address these requests as well.

## 1. Relevance and the Scope of Discovery

Although Rule 45 does not specifically provide for a relevancy objection—or the majority of objections Lambriar asserts—as a reason for quashing a subpoena, it is well settled "that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and 34."[15] Therefore, "the court must examine whether a request contained in a subpoena is overly broad or seeks irrelevant information under ths same standards" as the rules governing discovery requests served on parties.[16] Under Rule 26(b)(1), discovery may be obtained "regarding any non-privileged matter that is relevant to any party's claim or defense." Relevancy is broadly construed, and "[a] request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party."[17] When the discovery sought appears facially relevant, the party resisting discovery has the burden to show that the information does not come within the broad scope of relevance as defined by Fed. R. Civ. P. 26(b) or that potential harm outweighs the presumption in favor of broad disclosure.[18] Conversely, when a discovery request seeks information that is not facially relevant, the party seeking discovery bears the burden of

---

[15] *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003) (citing the advisory committee note to the 1970 Amendment of Rule 45(d)(1)).

[16] *Id.*

[17] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001) (internal citation omitted).

[18] *Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 670 (D. Kan. 2003).

demonstrating relevance.[19]  The same principles apply for overbreadth objections, discussed in the following subsection.[20]

Lambriar argues the scope of discovery in the underlying Arizona action is limited to the issue of proximate causation.  Lambriar has attached a portion of the transcript from the scheduling conference Judge Campbell conducted where Judge Campbell expressed his belief that the class certification motion would be fought on the RICO claim's element of proximate causation.[21]  The case management order also directs that class certification discovery "shall focus on proximate cause issues."[22] Lambriar fails to explain, however, how the discovery requests at issue would have no bearing on the issue of proximate causation.  Moreover, Lambriar raised this argument for the first time in its reply brief, thereby depriving plaintiffs of an opportunity to respond to the issue.  The court typically will not consider arguments raised for the first time in a reply brief, especially when capable of being presented earlier, as is the case here.[23]  For these reasons, the court rejects this argument.

Lambriar also contends discovery should be limited in scope to the subject of the named plaintiffs' dogs— specifically to facts pleaded in plaintiffs' first amended complaint pertaining to the dogs.  Lambriar cites portions of plaintiffs' first amended complaint, apparently assuming that this somehow speaks for itself.  However, the court cannot say that the bulk of the information

---

[19] *Goodyear*, 211 F.R.D. 633 (citing *Katz v. Batavia Marine & Sporting Supplies*, 984 F.2d 422, 424 (Fed. Cir. 1993); *Echostar Commc'ns Corp. v. The News Corp. Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998)).

[20] *Id.*

[21] Rep. Tr. of Proceedings Scheduling Conference 32:22-33:2, ECF No. 8-1.

[22] Case Management Order Ex. B., at 1, ECF No. 4-3.

[23] *See Minshall v. McGraw Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003) (stating that an argument raised for the first time in a reply brief is waived).

plaintiffs seek could have no bearing on the claims or defenses in the Arizona action.  Information may be relevant and discoverable even if plaintiffs have not specifically referenced this information within the four walls of their complaint.  Furthermore, Lambriar points to no authority from the Arizona action suggesting Judge Campbell has limited discovery in the manner Lambriar would have this court believe.  Therefore, the court declines to limit plaintiffs to discovery solely to the subject of the remaining named plaintiffs' dogs.

The court, however, finds one document request seeks information not facially relevant. The subpoena seeks documents reflecting communications between Lambriar and the Kansas Legislature and the United States Congress concerning the handling, breeding, care, and treatment of animals.  Plaintiffs do not explain how Lambriar's lobbying efforts relate to plaintiffs' claims that Petland made misrepresentations concerning the health and handling of the puppies it sold or how this information could possibly have any bearing on the other claims or defenses in the underlying Arizona action.  The relevance of this information is not apparent to the court, and plaintiffs have not satisfied their burden of demonstrating relevance.  Therefore, Lambriar need not respond to Request No. 38.

### 2. Overbreadth

Lambriar devotes a substantial portion of its arguments about overbreadth to the definitions section preceding the document requests.[24]  It appears Lambriar believes the definitions section is overbroad because it is drafted in a manner that makes the document requests more inclusive.

---

[24] Lambriar also points out that the definitions section references Fed. R. Civ. P. 34, which applies to requests for the production of documents to *parties*.  The definitions section also defines "document" as an item in the custody or control of the defendant.  Although plaintiffs erred by including this language in a subpoena to a nonparty, the court urges Lambriar to apply common sense to its reading of the subpoena.  Again, this is an issue capable of resolution without judicial intervention.

Lambriar cites no authority suggesting the definitions are inappropriate. In fact, these definitions are fairly typical of what the undersigned encounters when reviewing document production requests in this district. Generally speaking, the definitions section included in a request for the production of documents is aimed at bringing within its scope the most information possible. The definitions section is not overbroad merely because it is inclusive.

However, some document requests are facially overbroad because they contain omnibus terms that "make arduous the task of deciding which of numerous documents may conceivably fall within its scope."[25] The bulk of the document requests do use terms such as "concerning," "relating to," and "reflecting any." Document requests "'pertaining to' or 'concerning' a broad range of items requires the respondent either to guess or move through mental gymnastics . . . to determine which of the many pieces of paper conceivably contain some detail, either obvious or hidden, within the scope of the request."[26] Nevertheless, document requests are not *per se* overbroad merely because they contain omnibus phrases. For example, document requests are not facially objectionable when the omnibus phrase "modifies a sufficiently specific type of information, document, or event rather than large or general categories of information or documents[.]"[27]

Some of plaintiffs' document requests are indeed facially overbroad. Request No. 32 seeks, "Documents sufficient to identify all veterinarians you have employed since January 1, 2003 to the present."[28] This request could encompass employment records, which identify the veterinarians but

---

[25] *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 576 (D. Kan. 2009) (quoting *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 658 (D. Kan. 2006)).

[26] *Id.* (quoting *Johnson*, 238 F.R.D. at 658).

[27] *Id.* (quoting *Johnson*, 238 F.R.D. at 658).

[28] Subpoena in a Civil Case 9, ECF No. 1-1.

contain information having no bearing on the issues in the case. Similarly, Request No. 24 seeks, "All documents relating to the maintenance of Your facilities and the care of dogs prior to transportation to Petland."[29] This request could include anything from a receipt for paint to a bill for landscaping. Other document requests are facially objectionable, too. However, the parties' briefing on the issue of omnibus phrases lacks any specific discussion of the individual document requests. Lambriar asserts they are overbroad because they contain omnibus terms, and plaintiffs argue the phrases modify sufficiently specific categories of documents.

In the absence of *any* arguments directed at specific document requests, the court concludes the following requests are facially overbroad because they contain omnibus phrases that do not modify a sufficiently specific category of documents: Request Nos. 1, 3, 7-9, 11, 24, 27, 32, 35, and 39. Although some document requests are facially overbroad, "the responding party still has a duty to respond *to the extent the request is not objectionable*."[30] Lambriar has already admitted a portion of these document requests are reasonably answerable. It has agreed to a limited production as to Request Nos. 1, 3, and 11, and therefore, the subpoena is enforceable as to this limited production. Likewise, Lambriar does not object to identifying veterinarians Lambriar employed when plaintiffs' dogs were at the facility. Therefore, the subpoena is enforceable as to a limited production in response to Request No. 32. Lambriar need not produce all documents containing the names of these veterinarians, just documents sufficient to identify these individuals. Lambriar need not respond to Requests Nos. 7-9, 24, 27, 35, and 39 because the court finds these requests are facially overbroad, and plaintiffs have not demonstrated otherwise. The remainder of the document requests

---

[29] *Id.* at 8.

[30] *Aikens v. Deluxe Fin. Svs., Inc.*, 217 F.R.D. 533, 539 (D. Kan. 2003) (emphasis in original).

contain omnibus phrases that modify sufficiently specific categories of information.

### 3. Vagueness and Ambiguity Regarding "Puppy Mills"

Request No. 14 seeks, "All documents reflecting Your efforts to assure that breeders of Petland-For-Sale Dogs are not puppy mills, including the Big Creek Kennel, Debbie Powell, the Triple P. Kennel, and Tim Pendelton."[31] Plaintiffs also wish to depose a corporate representative about puppy mills. Lambriar argues that because the subpoena does not define "puppy mill" and because there is no universal definition of "puppy mill," any reference thereto is vague and ambiguous and should not be allowed. However, Lambriar already informed the court it does not object to a limited production of documents as to Request No. 14. It strains belief that Lambriar understands the request well enough to agree to a limited production but refuses to fully respond because it does not understand the meaning of "puppy mill." Even if this were the case, Lambriar could have sought a definition from plaintiffs during their meet-and-confer sessions, as this is an issue capable of resolution without judicial intervention. Plaintiffs have provided adequate guidance on the definition of "puppy mill" in their response brief. To the extent Lambriar is still perplexed, it may apply the following definition, taken from plaintiffs' First Amended Class Action Complaint: "a dog breeding operation in which the health of the dogs is disregarded in order to maintain a low overhead and maximize profits."[32]

Plaintiffs have adopted the definition of "puppy mill" found in *Avenson v. Zegart*, a 1984 opinion from the District of Minnesota. Lambriar takes issue with this definition because, among other things, (1) it is from the District of Minnesota and not binding on this court; (2) the opinion

---

[31] Subpoena in a Civil Case 7, ECF No. 1-1.

[32] First Amended Class Action Compl. Ex. A, at ¶ 43, ECF No. 4-2 (quoting *Avenson v. Zegart*, 577 F. Supp. 958, 960 (D. Minn. 1984)).

fails to cite appropriate authority for this definition; (3) this merely is a definition of American capitalism, and "there is nothing wrong with making a profit."[33] These arguments are immaterial to the discovery dispute before the court. Plaintiffs also are not barred from discovering relevant documents because the District of Kansas has not articulated a definition of a "puppy mill." The issue is not whether Lambriar agrees with or approves of plaintiffs' definition of a "puppy mill." The issue is whether Lambriar has been put in a position to understand what is being asked of it. To that end, the court finds Lambriar has been given sufficient guidance at this point. Although Lambriar has already agreed to a limited production as to this document request, the court finds the entirety of Request No. 14 is enforceable.

### 4. Undue Burden

Compliance with a subpoena inevitably involves some measure of burden to the producing party. Nevertheless, the court will not deny a party access to relevant discovery merely because compliance inconveniences a nonparty or subjects it to some expense.[34] Nor will the court "excuse compliance with a subpoena for relevant information simply upon the cry of 'unduly burdensome.'"[35] Rather, "[t]o demonstrate undue burden, the subpoenaed party must show that compliance with the subpoena would seriously disrupt its normal business operations."[36]

Lambriar has not met its burden of demonstrating that compliance with the subpoena would

---

[33] Reply in Support of Mot. to Quash, Modify and/or for a Protective Order on a Subpoena in a Civil Case at 17, ECF No. 8.

[34] *EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir. 1993).

[35] *Id.*

[36] *NLRB v. Midwest Heating and Air Conditioning*, 528 F. Supp. 2d 1172, 1179 (D. Kan. 2007) (internal quotations omitted); *see also EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d at 1040 ("[T]he [subpoenaed party] must show that compliance would unduly disrupt and seriously hinder normal operations of the business.").

seriously disrupt its normal business operations or subject it to undue expense. Plaintiffs have satisfied their obligation to avoid imposing an undue burden on Lambriar by offering to travel to Mahaska, Kansas, to inspect and copy documents Lambriar is to produce.[37] Accordingly, Lambriar's calculation of costs associated with copying the documents does not establish an undue burden when plaintiffs have proposed a method of production that would mitigate these costs.

The vice president of Lambriar has submitted a second declaration in which she outlines why it is unduly burdensome for plaintiffs to inspect and copy the documents. Her statements are conclusory and do not support barring discovery. For example, she states Lambriar has assured its breeders that it will protect information about them from disclosure to the Humane Society of America, People for the Ethical Treatment of Animals, and the Animal Legal Defense Fund. Although some lawyers from the Humane Society of America represent the named plaintiffs, these organizations are not parties to this suit, and the undersigned will not prohibit plaintiffs from discovering their case based on unsupported allegations regarding nonparty animal welfare and animal rights groups.

Lambriar cannot have it both ways: complaining about expenses associated with copying a large number of documents but dismissing plaintiffs' offer to inspect and copy documents. Lambriar's suggestion that plaintiffs' counsel either purchase an $18,000 copy machine for Lambriar's use or ship a copy machine from plaintiffs' counsel's law offices is not a reasonable cost-shifting mechanism when plaintiffs have proposed a plan that will minimize costs for both Lambriar and themselves. Indeed, under Lambriar's proposal, it would still bear the costs associated with employing individuals to copy the documents; whereas, allowing plaintiffs to inspect and copy

---

[37] *See* Fed. R. Civ. P. 45(c)(1) (providing that a party serving a subpoena "must take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena").

documents would actually result in a lesser cost to Lambriar. To the extent Lambriar fears plaintiffs'

attorneys and legal staff will scour every inch of Lambriar's facilities for responsive documents, this

is not what the court envisions. Lambriar shall identify responsive documents and shall make them

available to plaintiffs for inspection and copying at Lambriar's facilities, or alternatively, Lambriar

may send responsive documents to Lambriar's counsel's law office in Overland Park, Kansas, and

plaintiffs counsel may inspect and copy the documents at that location. For these reasons and

because the court has already limited the document requests to which Lambriar must respond, the

subpoena, as modified, does not impose an undue burden on Lambriar.

### 5.  100-Mile Rule

Lambriar argues the court should quash the subpoena because it requires Lambriar to

produce documents in Topeka, Kansas, more than 100 miles from Lambriar's facilities in Mahaska,

Kansas. This argument is without merit. Rule 45(c)(3) provides the court may quash a subpoena

when it "requires *a person* who is neither a party nor a party's officer to travel more than 100 miles

from where that person resides, is employed, or regularly transacts business[.]"[38] The subpoena in

this case does not command any person to appear in Topeka, Kansas, but instead requires that

documents be *sent* to Topeka, Kansas.[39] The 100-mile rule does not apply to documents being

mailed to a party seeking discovery.[40] Therefore, the court rejects this argument.

### 6.  Veterinarian-Client Privilege

---

[38] Fed. R. Civ. P. 45(c)(3)(A)(ii) (emphasis supplied).

[39] *See* Fed. R. Civ. P. 45(c)(2)(A) ("A person commanded to produce documents . . . need not appear in person at the place of production . . . unless also commanded to appear for a deposition, hearing, or trial.").

[40] *See Stewart v. Mitchell Transport*, No 01-2546-JWL, 2002 WL 1558210, at *3 (D. Kan. July 8, 2002) (rejecting a similar argument because "the entities subpoenaed are merely required to mail the documents, or have them delivered, to Plaintiffs' counsel's office").

Lambriar also asserts that an undisclosed number of documents are not discoverable because they are protected by the veterinarian-client privilege. K.S.A. 47-839(a) provides,

> Except as otherwise provided under K.S.A. 47-622 and 47-624, and amendments thereto, a licensed veterinarian shall not disclose any information concerning the veterinarian's care of an animal except on written authorization or other waiver by the veterinarian's client or on appropriate court order *or subpoena*. Any veterinarian who releases information under written authorization or other waiver by the client or under court order or *subpoena* shall not be liable to the client or any other person. The privilege provided by this section shall be waived under the following circumstances: (1) Reporting cruel or inhumane treatment of any animal to federal, state or local governmental agencies; (2) where information is necessary to provide care in an emergency where the absence of immediate medical attention could reasonably be expected to place the animal's health in serious jeopardy or impair bodily function; (3) where the failure to disclose vaccination information may endanger the public's health, safety or welfare; (4) where the veterinarian's client or the owner of the animal places the veterinarian's care and treatment of the animal or the nature and extent of injuries to the animal at issue in any civil or criminal proceeding; or (5) in relation to any investigation by the board and any subsequent administrative disciplinary action brought by the board.[41]

Kansas is one of a growing number of states that has enacted a statute recognizing a veterinarian-client privilege.[42] The plain language of the statute prohibits a veterinarian from disclosing information concerning the veterinarian's care of an animal except under limited circumstances, a subpoena being one of those circumstances. A fundamental rule of statutory construction, to which all other rules are subordinate, is that courts must give effect to the legislature's intent as expressed in the statute. To that end, the Kansas Supreme Court has directed that when the language of a statute is plain and unambiguous, courts must "give effect to that

---

[41] K.S.A. 47-839(a) (emphasis supplied).

[42] *In re Krug*, 177 B.R. 711, 712 (D. Kan. Bankr. 1994) (citing Ga. Code Ann. § 24-9-29; Ill. Ann. Stat. ch. 255, para. 115/25.17; Mo. Stat. Ann. § 340.286).

language rather than determine what the law should or should not be, speculate as to legislative intent, add something not readily found in the statute, resort to the canons of statutory construction, or consult legislative history."[43]

Lambriar argues it may still withhold information on the basis of the veterinarian-client privilege even though plaintiffs have served a subpoena on Lambriar. Lambriar agues that allowing disclosure upon service of a subpoena renders the statute without effect. It appears that under Lambriar's reading of K.S.A. 47-839, this type of information could only be disclosed upon waiver of the privilege by the client and/or owner of the animal. This is not the case. The statute contemplates waiver and service of a subpoena as two separate instances upon which a licensed veterinarian may disclose this information.[44] The statute is unambiguous. Veterinarians may produce information concerning the veterinarian's care of an animal if subpoenaed. Moreover, Lambriar does not contend it qualifies as a licensed veterinarian under the statute, and Lambriar has not explained how this statute—which expressly applies to information sought from veterinarians—somehow allows Lambriar to withhold documents.[45] For these reasons, the veterinarian-client privilege does not apply, and Lambriar may not withhold information on this basis.

### 7.    Confidential, Commercial or Proprietary Information

---

[43] *Polson v. Farmers Ins. Co.*, 288 Kan. 165, 168, 200 P.3d 1266, 1270 (2009).

[44] This reading of the statute is in line with the only opinion construing the statute. Although then-Bankruptcy Judge Julie A. Robinson's opinion analyzes who is the holder of the privilege and the circumstances upon which waiver occurs, Judge Robinson also states that absent waiver, "the statute prohibits a veterinarian from disclosing privileged information unless he or she is directed to do so by a court order or subpoena or unless it is the type of information addressed in K.S.A. 47-622 and 47-624, which place a duty on veterinarians to report certain diseases to the state's livestock commissioner." *In re Krug*, 177 B.R. at 712.

[45] *See In re Krug*, 177 B.R. 711 (involving a plaintiff who argued the privilege barred his veterinarian from testifying about certain matters).

Lambriar also contends that an undetermined number of documents contain confidential, commercial, and proprietary information. The party moving to quash or modify a subpoena on the basis that it seeks documents containing confidential or commercial information has the burden to establish "that the information sought is confidential and that its disclosure will result in a clearly defined and serious injury to the moving party."[46] "The claim 'must be expressly made and supported by a sufficient description of the nature of the documents, communications, or things not produced so as to enable the demanding party to contest the claim.'"[47] Lambriar fails to provide any description of the documents withheld, and its blanket assertion that many documents contain confidential or propriety information is insufficient. Without considerably more information from Lambriar, this is not an appropriate basis to quash or modify this subpoena.

### B.    Rule 30(b)(6) Deposition

Plaintiffs failed to tender witness and mileage fees at the time they served the subpoena on Lambriar. Fed. R. Civ. P. 45(b)(1) provides that if a subpoena requires attendance at a deposition, it must be accompanied by witness and mileage fees. Failure to tender witness fees and reasonably estimated mileage fees at the time of service of the subpoena renders the subpoena unenforceable.[48] Plaintiffs argue that they could not tender such fees because they did not know the location from which the deponent would be traveling. Plaintiffs cite several opinions from other districts for the proposition that this defect may be cured if the party seeking discovery later tenders the appropriate fees. The court need not take up this argument because it still appears that to date, plaintiffs have

---

[46] *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 592 (D. Kan. 2003) (citing *Stewart v. Mitchell Transp.*, No. 01-2546, 2002 WL 1558210, at *8 (D. Kan. July 8, 2002)).

[47] *Id.* (quoting *Stewart*, 2002 WL 1558210, at *8).

[48] *See Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 686 (D. Kan. 1995).

not tendered the appropriate fees. Moreover, the date of the scheduled deposition has now passed.

The record before the court does not demonstrate that the parties adequately conferred about the scheduled deposition. For example, the correspondence between plaintiffs' counsel and Lambriar's counsel focuses on the document production requests, not the deposition. The undersigned is confident the parties are capable of resolving this issue among themselves. Accordingly, counsel for the plaintiffs shall confer with counsel for Lambriar about a mutually agreeable, time, date, and location for the Rule 30(b)(6) deposition. Lambriar's reply brief suggests any corporate designee will travel from Mahaska, Kansas;[49] therefore, plaintiffs now have sufficient information to calculate the appropriate fees. After conferring with counsel for Lambriar, plaintiffs' counsel may serve another subpoena with the appropriate fees.

### C. Inspection Request

Lambriar appears to attack plaintiffs' request to inspect Lambriar's premises on the basis of relevancy. The court must examine relevancy as a threshold matter when determining whether to allow a discovery request, even though Rule 45 does not provide for a relevancy objection.[50] The court examines relevancy under the same standard previously stated when considering plaintiffs' document requests.

In this case, the court finds plaintiffs' request to inspect Lambriar's premises is likely to yield only marginally relevant information. Plaintiffs contend the inspection is necessary because plaintiffs need to identify the sections of Lambriar through which puppies sold to Petland passed. Plaintiffs state they must also determine the subsequent modifications to the facilities in order to

---

[49] Reply in Supp. of Mot. to Quash 2, ECF No. 8.

[50] *Goodyear*, 211 F.R.D. at 662.

question Lambriar's 30(b)(6) corporate designee. However, an inspection of a nonparty's premises is a relatively invasive discovery method, especially when it appears plaintiffs could elicit the information they seek through document production requests or depositions. The burden on Lambriar in accommodating the request outweighs potential benefits to plaintiffs. Therefore, Lambriar need not comply with plaintiffs' request to inspect the premises.

### D. Protective Order

Lambriar also seeks a protective order in conjunction with or in alternative to quashing or modifying the subpoena. Lambriar requests a protective order that: (1) forbids in whole or in part the requested disclosures or discovery sought by the subpoena; (2) prescribes a discovery method other than premises inspection; (3) limits the scope of discovery to matters pertaining to the remaining named plaintiffs' dogs; (4) requires the 30(b)(6) deposition to be sealed and only opened upon order of this court; (5) requires that privileged, confidential, commercial or proprietary information not be revealed, or be revealed in a way specified by this court; (6) requires that any documents or information produced by Lambriar be filed under seal in this district and in the District of Arizona; (7) requires that information and documents disclosed by Lambriar not be provided to anybody other than the named plaintiffs and their attorneys of record in *Martinelli, et al. v. Petland, Inc.*, specifically not to the Humane Society; and (8) that all documents and information be returned to Lambriar at the conclusion of the Arizona action.

Fed. R. Civ. P. 26(c) governs protective orders and provides that, "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on *matters relating to a deposition*, in the court for the district where

the deposition will be taken."[51]  The plain language of this section and the Advisory Committee Notes suggest that protective orders issued from a district other than the one in which the action is pending should address matters relating to a deposition.[52]  The scope of Lambriar's request for a protective order goes far beyond the matters pertaining to the deposition, and Lambriar has cited no authority demonstrating that this court has the power to grant the relief requested—specifically, directing that certain documents filed in the District of Arizona must be sealed and narrowing the scope of discovery with regard to the subpoena served on Lambriar.

Furthermore, Lambriar has not demonstrated good cause sufficient to warrant the entry of a protective order.  Fed. R. Civ. P. 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."  To demonstrate good cause, the party seeking a protective order must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[53]  A protective order may only issue if the moving party demonstrates the basis for the order falls into one of the categories listed in Rule 26(c): annoyance, oppression, undue burden or expense.[54]  Lambriar's motion fails to state the basis for which it seeks a protective order and fails to set forth any facts that demonstrate good cause exists to enter a protective order.  For these

---

[51] Fed. R. Civ. P. 26(c) (emphasis supplied).

[52] *See, e.g.,* Fed. R. Civ. P. 26(c) advisory committee notes to the 1966 amendment.

[53] *Aikens*, 217 F.R.D. at 534 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, n.16 (1981)).

[54] *P.S. v. Farm, Inc.*, No. 07-2210-JWL, 2009 WL 483236, at *3 (D. Kan. Feb. 24, 2009); *see also Aikens v. Deluxe Fin. Svs., Inc.*, 217 F.R.D. at 534 ("A party may obtain a protective order only if it demonstrates the basis for the protective order falls within one of the categories enumerated in Rule 26(c).  In other words, the protective order must be necessary to protect the party from 'annoyance, embarrassment, oppression, or undue burden or expense.  Rule 26(c) does not provide for any type of order to protect a party from having to divulge privileged information or materials that are not calculated to lead to the discovery of admissible evidence.").

reasons, Lambriar's request for a protective order is denied.

### E. Costs and Attorney Fees

Fed. R. Civ. P. 45(c)(1) allows for sanctions to the party responsible for issuing and serving a subpoena that places an undue burden on the responding party. The sanctions may include attorney fees, which Lambriar requests. However, the court already found Lambriar did not establish an undue burden or expense in light of plaintiffs' offer to inspect and copy the requested documents. Accordingly, sanctions are not appropriate.

The court may also award costs and attorney fees pursuant to Fed. R. Civ. P. 26(c)(3), which provides that Fed. R. Civ. P. 37(a)(5) applies to an award of expenses when a motion for a protective order is granted, denied, or granted in part and denied in part. Rule 37(a)(5) provides that when a motion is denied, the court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," unless the motion "was substantially justified or other circumstances make an award of expenses unjust." In this case, other circumstances make an award unjust. Although Lambriar's request for a protective order is denied in full, the court has granted, in part, Lambriar's request to quash or modify the subpoena, which illustrates that some of Lambriar's arguments against discovery have merit even if Lambriar failed to establish good cause for a protective order.

### III. Conclusion

Lambriar's motion is granted in part and denied in part. The subpoena served upon Lambriar shall be modified to limit disclosure of documents as follows: The subpoena is enforceable as drafted as to Request Nos. 2, 4-6, 10, 12-17, 19, 22, 23, 25, 26, 28-31, 33, 34, 36, 37, 40, 41. The

subpoena is enforceable as to the limited production Lambriar has agreed to make in response to Request Nos. 1, 3, 11, and 32. Lambriar need not respond to Request Nos. 7-9, 24, 27, 35, 38, and 39. Request Nos. 18, 20, 21, have been withdrawn. Within twenty (20) days from the date of this order, Lambriar shall make all responsive documents available to plaintiffs for copying and inspection at Lambriar's facility in Mashaka, Kansas, or at their counsel's law office in Overland Park, Kansas. As the court has already ruled, Lambriar may not withhold information on the basis of the veterinarian-client privilege. The subpoena is unenforceable as to the Rule 30(b)(6) deposition. Plaintiffs may serve another deposition subpoena with appropriate fees. Lambriar need not comply with the request to inspect Lambriar's premises. Lambriar's motion is denied in all other respects.

Accordingly,

**IT IS THEREFORE ORDERED** that Lambriar, Inc.'s Motion to Quash, Modify and/or for a Protective Order on a Subpoena in a Civil Case (ECF No. 1) is hereby GRANTED in part and DENIED in part as detailed above.

**IT IS SO ORDERED.**

Dated this 7th day of October, 2010, at Topeka, Kansas.


<u>s/ K. Gary Sebelius</u>
K. Gary Sebelius
U.S. Magistrate Judge